# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI CENTRAL DIVISION

GREATER MIDWEST BUILDERS, LTD., )
)
Plaintiff, )
)
v. )
) NO. 2:11-CV-4225-FJG
)
FEDERAL DEPOSIT INSURANCE )
CORP., ET AL., )
)
Defendants. )
)
)

## ORDER

Currently pending before the Court is the defendant, Federal Deposit Insurance Corporation, as Receiver ("FDIC-R's") Motion to Dismiss for Failure to State a Claim (Doc. # 12); Defendant CADC/RADC Venture 2011-1 LLC ("CADC's") Motion to Dismiss (Doc. # 16) and Defendant CADC's Motion for Leave to Add Parties and File a Counterclaim and Third-Party Complaint (Doc.# 29).

### I. BACKGROUND

Plaintiff entered into various loan transactions with Premier Bank in order to facilitate the development of the Grover Crossing Subdivision in Wildwood, Missouri. Three Standby Letters of Credit were executed on November 9, 2009. In connection with the Standby Letters of Credit, and as part of a single transaction, plaintiff also entered into Loan 3498 on September 7, 2005 and a second related loan, Loan 6544 on July 28, 2008. In reliance upon Premier Bank's issuance of the Standby Letters of Credit, plaintiff entered into Letter of Credit Deposit Agreements with the City of

Wildwood. The Standby Letters of Credit served as various required deposits. On October 15, 2010, Premier Bank was placed in receivership and the FDIC-R was appointed receiver. On January 10, 2011 and February 16, 2011, the FDIC-R disaffirmed the Standby Letters of Credit and repudiated Loan 3498. On May 16, 2011, in accordance with 12 U.S.C. § 1821, plaintiff timely filed a Proof of Claim with the FDIC alleging actual damages and setoff. On June 27, 2011, the FDIC mailed its Notice of Disallowance to Plaintiff. In September 2011, the FDIC sold and/or assigned its interest in the loans and/or security instruments to CADC. Plaintiff alleges that the FDIC-R's repudiation of the Letters of Credit and the Loan caused it to default on agreements with the City of Wildwood and incur damages as a result of its default. Plaintiff also claims that the repudiation made it impossible for plaintiff to develop the subdivision, meet its obligations to the City of Wildwood and any obligations it may have under the loans. In the Amended Complaint, plaintiff asserts three causes of action: Count I - Actual Damages Resulting from Repudiation Under 12 U.S.C. § 1821(e)(3) against the FDIC; Count II - Setoff against all defendants and Count III - Declaratory Judgment against all defendants.

## II. STANDARD

To survive a motion to dismiss under 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678,129 S.Ct.1937,1949,173 L.Ed.2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A pleading that merely pleads "labels and conclusions" or a "formulaic recitation" of the elements of a cause of action, or "naked assertions"

devoid of "further factual enhancement" will not suffice. Id. (quoting Twombly). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. Under Fed. R. Civ. P. 12(b)(6) we must accept the plaintiff's factual allegations as true and grant all reasonable inferences in the plaintiff's favor. Phipps v. FDIC, 417 F.3d 1006, 1010 (8th Cir. 2005).

## III. DISCUSSION

### A. FDIC's Motion to Dismiss

The FDIC-R moves to dismiss plaintiff's Amended Complaint because it alleges that plaintiff cannot show that it suffered any damages as of the date of the appointment of the FDIC-R and therefore, plaintiff is precluded from recovery by 12 U.S.C. § 1821(e)(3)(A).

12 U.S.C. § 1821(e)(3)(A) states in part:

> (3) Claims for damages for repudiation
>
> (A) In general
>
> Except as otherwise provided in subparagraph (C) and paragraphs (4),(5), and (6), the liability of the conservator or receiver for the disaffirmance or repudiation of any contract pursuant to paragraph (1) shall be -
> (I) limited to actual direct compensatory damages; and
> (ii) determined as of -
> (I) the date of the appointment of the conservator or receiver; or
> (II) in the case of any contract or agreement referred to in paragraph (8), the date of the disaffirmance or repudiation of such contract or agreement.
>
> (B) No liability for other damages
>
> For purposes of subparagraph (A), the term "actual direct compensatory damages" does not include -

(I) punitive or exemplary damages;
(ii) damages for lost profits or opportunity; or
(iii) damages for pain and suffering.

FDIC-R states that plaintiff is not entitled to damages under FIRREA if no amounts were due at the time of the FDIC-R's appointment. FDIC-R argues that if the trigger for payment of a standby letter of credit had not occurred prior to the receiver's appointment, then the repudiation of the letter of credit does not create any "actual direct compensatory damages." FDIC-R states that it was appointed receiver on October 15, 2010 and that as of that date, no draw requests had been made on the Letters of Credit. The FDIC-R states that because it repudiated the Letters of Credit and Loan 3498 before any obligation for payment was triggered, plaintiff has no damages. FDIC-R also argues that plaintiff is not entitled to setoff because it does not have a valid claim against the FDIC-R.

In opposition, plaintiff argues that while no funds had been drawn on the Letters of Credit at the time the FDIC was appointed, funds had been drawn on the loans. Plaintiff states that $2,677,000.00 was drawn on one loan from October 2005 through October 2008 and at least $581,823.08 was drawn on Loan 6544 from August 2008 through July 2009. In reply, FDIC states that in Credit Life Ins. Co. v. FDIC, 870 F.Supp. 417, 426 (D.N.H.1993), the court held that no damages would be due as long as the triggering event for payment of the letter of credit had not occurred prior to the date the bank was declared insolvent. The FDIC-R states that because plaintiff admits that no drafts were presented prior to October 15, 2010, no amounts were due and plaintiff it is not entitled to damages.

The Court finds the facts of Credit Life to be distinguishable. In that case, the

bank had issued a standby letter of credit for the account of New England States Re, Ltd. and for the benefit of Credit Life Insurance Company. The Letter of Credit secured N.E. States's obligation to make payment on certain reinsurance obligations. Credit Life agreed to satisfy any demand for funds first from a trust account and to access the Letter of Credit only after all funds from the trust account were exhausted. The Court in Credit Life stated that "if FDIC-Receiver had authority to disaffirm the letter of credit, no damages would be due as long as the triggering event - the exhaustion of the trust account and presentation of a sight draft - had not occurred prior to the date the bank was declared insolvent." Id. at 425-26. The Court found that because no sum was owing at the time the bank was declared insolvent, Credit Life was not entitled to damages. Id. at 426.

In FDIC v. Parkway Executive Office Center, No. Civ. A 96-121, 96-122, 1998 WL 18204 (E.D.Pa. Jan. 9,1998), the bank lent money to Parkway Executive Office Center as part of a Construction Loan and Security Agreement. Parkway executed a Note and this was also backed by a Guaranty. The bank was declared unsound and the Resolution Trust Corporation was appointed as receiver. The RTC then repudiated the undisbursed balance of the Construction Loan. The Court noted that while the "repudiation frees the receiver from having to comply with the contract, it is treated as a breach of contract that gives rise to an ordinary contract claim for damages. . . . The damages for which the FDIC is liable, however, are limited significantly under FIRREA." Id. at *2. The Court noted:

> Under § 1821 (e)(3)(A)(ii), damages caused by repudiation are measured on the date the Receiver was appointed, not on the date of repudiation. Damages caused by repudiation which are fixed and

> determined on the date of Receivership are recoverable. A recoverable claim must represent an amount due and owing at the time of the declaration of insolvency, although the specific amount of the claim may be established later. The Court must first consider whether the contractual right at issue vested prior to the appointment of the FDIC as Receiver.

Id. at *2 (quoting Citibank, N.A. v. FDIC, 827 F.Supp. 789, 791 (D.D.C.1993), modified in part on other grounds, 857 F.Supp. 976 (D.D.C.1994)). The Court stated that in order to determine whether a right has vested on the date that a bank is declared insolvent, courts first "look to whether the insolvent bank's promise was binding and enforceable under contract law at that time." Id. at *3 (internal citations and quotations omitted). In that case, the Court found that the Promissory Note, the Note Modification Agreement and the Construction Loan and Security Agreement imposed obligations on both parties, finding that the bank was obligated under the Note to disburse funds and defendants were obligated to make payments of interest and principal to repay the disbursements. Thus, the court found that "Defendants' contractual right to funding vested prior to the appointment of the RTC as Receiver." Id. The next question the Court addressed was whether the damages were fixed and certain "as of" the date of the appointment of the Receiver. The court noted that the FDIC argued that the defendant's claims were speculative on the date of the insolvency, because they did not arise until the FDIC actually repudiated the loan some months later. However, the Court rejected this argument, stating:

> Although superficially such reasoning appears consistent with § 1821(e), this argument conflicts with the statutory intent of FIRREA to allow claims for contracts in force prior to insolvency. [Plaintiff's] reasoning could be extended to deny any contractual claim arising from repudiation. Such claims are always contingent on the date of insolvency because a receiver cannot repudiate a contract until after it

> is appointed. . . . In this case, the contract right that gave rise to Defendants' claim was created before the FDIC was appointed Receiver. So long as this right existed on January 11, 1990, the damages that result from the repudiation of the obligation are sufficiently fixed and certain. . . . The damages are simply calculated "as of" the appointment date. . . . Any contrary interpretation would permit recovery only when a contract had been breached before receivership- a result clearly contrary to the plain language of the statute, Congress' intent, and the common law.

Id. at *3 (internal citations and quotations omitted).

The Court finds this reasoning applicable to the instant case. The Standby Letters of Credit were executed on November 9, 2009 and as part of a single transaction with the Standby Letters, plaintiff also entered into Loan 3498 on September 7, 2005 and Loan 6544 on July 28, 2008. Plaintiff notes that $2,677,000.00 was drawn on one loan from October 2005 through October 2008 and at least $581,823.08 was drawn on Loan 6544 from August 2008 through July 2009. As of the date that the FDIC was appointed, plaintiff was not in default on either loan and had been making the required interest payments. Under these two loans, the bank was obligated to disburse these funds and the plaintiff was obligated to make interest payments. So, even though no funds had been drawn on the Letters of Credit at the time the FDIC was appointed, the Court finds nonetheless that the "contractual right at issue vested prior to the appointment of the FDIC as Receiver." Id. at *2. The Court also finds that the damages were fixed and certain "as of" the date of the appointment of the receiver. Therefore, because the Court finds that the statute does not bar plaintiff's claims for damages pursuant to 12 U.S.C. § 1821(e)(3), the Court hereby **DENIES** FDIC-R's Motion to Dismiss (Doc. # 12).

**B. CADC's Motion to Dismiss**

For the same reasons which were raised in FDIC-R's Motion to Dismiss, Defendant CADC also moves to dismiss plaintiff's Complaint. CADC argues that plaintiff did not have any "actual direct compensatory damages" and because plaintiff's damages fail as a matter of law, there is no amount to setoff against CADC. However, as was discussed above, the Court finds that the statute does not bar plaintiff's claim for damages. Accordingly, because plaintiff has stated a claim for damages, the Court also finds that plaintiff may assert its claim for setoff of its damages against any obligations it may have under the loans. Accordingly, the Court hereby **DENIES** CADC's Motion to Dismiss (Doc. # 16).

### C. CADC's Motion for Leave to Add Parties, File A Counterclaim and a Third-Party Complaint

CADC moves for leave to add a counterclaim against plaintiff for breach of the notes at issue as well as to add third parties and assert cross claims against those parties for breach of the guaranties. CADC states that the third parties are principals of Midwest Builders. Counsel for CADC states that counsel for Midwest Builders and the FDIC do not oppose this motion. Accordingly, for good cause shown and with no opposition indicated, the Court hereby **GRANTS** CADC's Motion for Leave to Add Parties, File a Counterclaim and a Third-Party Complaint (Doc. # 29). CADC shall file its Counterclaim and Third-Party Complaint within five days of the date of this Order.

## IV. CONCLUSION

For the reasons stated above, the Court hereby **DENIES** FDIC-R's Motion to Dismiss for Failure to State a Claim (Doc. # 12); **DENIES** CADC's Motion to Dismiss (Doc. # 16) and **GRANTS** CADC's Motion for Leave to Add Parties and File a

Counterclaim and Third-Party Complaint (Doc.# 29).

Date: June 22, 2012
Kansas City, Missouri

**S/ FERNANDO J. GAITAN, JR.**
Fernando J. Gaitan, Jr.
Chief United States District Judge