# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI CENTRAL DIVISION

| | |
|---|---|
| GREATER MIDWEST BUILDERS, LTD., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) NO. 2:11-CV-4225-FJG <br> ) <br> FEDERAL DEPOSIT INSURANCE ) <br> CORP., ET AL., ) <br> ) <br> Defendants. ) <br> ) <br> ) | |

## ORDER

Currently pending before the Court is defendant FDIC-R's Motion for Summary Judgment (Doc. # 56), defendant CADC/RADC Venture 2011-1, L.L.C.'s Motion for Summary Judgment (Doc. # 58), FDIC's Motion to Strike Exhibit H of Plaintiff's Response in Opposition to FDIC-R's Motion for Summary Judgment (Doc. # 83), CADC's Motion in Limine to Exclude Plaintiff From Offering Hearsay Testimony (Doc. # 91), FDIC-R's Motion in Limine to Exclude Hearsay Testimony (Doc. # 93) and FDIC-R's Motion in Limine to Exclude Documents Not Produced by Plaintiff (Doc. # 95).

## I. BACKGROUND

In 2005, Plaintiff, Greater Midwest Builders, Ltd. ("GMB") purchased land in Wildwood, Missouri for the purpose of developing, building and selling attached homes. In order to finance this project, GMB entered into various loan transactions with Premier Bank in order to facilitate the development of the Grover Crossing Subdivision in Wildwood, Missouri. On September 7, 2005 plaintiff entered into loan 23498 with

Premier Bank, whereby the bank extended a commercial draw account to plaintiff in the amount of $2,677,000. This loan was renewed five times: (September '07, March '08, June '08, June '09 and June '10). During the process of renewal, the total amount available to GMB was changed to $2,252,889.31. As of June 7, 2010, Premier Bank had loaned GMB the full amount of the commercial draw account under this loan and no further funds were available to plaintiff. Loan 23498 matured on December 7, 2010.

On July 28, 2008, GMB entered into Loan 26544 with Premier Bank whereby Premier extended a commercial draw account to Plaintiff in the amount of $1,126,950. This loan was renewed on two occasions (June '09 and June '10). During the process of renewing, the loan amount was changed to $764,131.84. As of June 7, 2010, Premier Bank had loaned plaintiff the full amount of the commercial draw account and no further funds were available to plaintiff. Loan 26544 also matured on December 7, 2010.

In 2009, Greater Midwest Builders built two display homes in Grover Crossing, but had no financing available to begin building inventory homes for sale. On November 9, 2009, Premier Bank established three irrevocable standby letters of credit in favor of the City of Wildwood and for the account of GMB. In reliance upon Premier Bank's issuance of these Standby Letters of Credit, GMB entered into Letter of Credit Deposit Agreements with the City of Wildwood. The Standby Letters of Credit served as various required deposits.

On October 15, 2010, Premier Bank was placed in receivership and the FDIC-R was appointed receiver. FDIC-R published notice of Premier Bank's receivership as well as notice to creditors on October 21, 2010. In the notice, FDIC-R instructed GMB

2

Case 2:11-cv-04225-FJG   Document 104   Filed 12/11/12   Page 2 of 17

that all payments under Loan 3498 should be made payable to FDIC-R and advised GMB to immediately seek an alternative funding source. Pursuant to the terms of the renewal note dated June 7, 2010, Loan 3498 matured on December 7, 2010 and all principal and interest became due and owing. GMB failed to make payment in full on Loan 3498 when it became due and owing on December 7, 2010.

On January 10, 2011 the FDIC-R, sent GMB notice of its repudiation of the three letters of credit. It also notified GMB that its failure to pay Loan 3498 in full on its maturity date constituted a default under Loan 3498. On January 26, 2011, the FDIC-R sent a demand letter to GMB requesting immediate payment of Loan 3498 in full. On February 17, 2011, the FDIC-R notified GMB that it was exercising its right of repudiation of Loan 3498. On May 16, 2011, in accordance with 12 U.S.C. § 1821, plaintiff filed a Proof of Claim with the FDIC alleging actual damages and setoff. On June 27, 2011, the FDIC mailed it Notice of Disallowance to Plaintiff. On August 24, 2011, the FDIC sold and/or assigned its interest in the loans and/or security instruments to CADC/RADC Venture 2011-1, L.L.C.

Plaintiff alleges that the FDIC-R's repudiation of the Letters of Credit and the Loan caused it to default on agreements with the City of Wildwood and incur damages as a result of its default. Plaintiff also claims that the repudiation made it impossible to develop the subdivision, meet its obligations to the City of Wildwood and any obligations it may have under the loans. In the Amended Complaint, plaintiff asserts three causes of action: Count I - Actual Damages Resulting from Repudiation Under 12 U.S.C. § 1821(e)(3) against the FDIC; Count II - Setoff against all defendants and Count III - Declaratory Judgment against all defendants. The FDIC-R is seeking summary

3

judgment on all of GMB's claims. CADC is also seeking summary judgment on GMB's claims against it as well as summary judgment on its counterclaim against GMB and its third-party complaint against the guarantors, Greater Midwest Builders, Inc, Paul Campbell and Sarajane Campbell.

## II. STANDARD

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the moving party meets this requirement, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. 242, 248 (1986). In Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), the Court emphasized that the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts" in order to establish a genuine issue of fact sufficient to warrant trial. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushia, 475 U.S. 574, 588; Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985).

4

## III. DISCUSSION

### A. FDIC's Motion for Summary Judgment

**1.** Count I - Actual Damages From Repudiation Under 12 U.S.C. § 1821(e)(3)

Section 1821(e)(1) of FIRREA gives the FDIC-R the power to repudiate any contract it deems to be "burdensome" and inconsistent with "the orderly administration of the institution's affairs." Repudiation is treated as a breach of contract giving rise to an ordinary contract claim for damages. However, the types of damages recoverable against FDIC-R are significantly limited under FIRREA. The statute states in part:

> (3) Claims for damages for repudiation
>
> (A) In general
>
> Except as otherwise provided in subparagraph (C) and paragraphs (4),(5), and (6), the liability of the conservator or receiver for the disaffirmance or repudiation of any contract pursuant to paragraph (1) shall be -
> (I) limited to actual direct compensatory damages; and
> (ii) determined as of -
>   (I) the date of the appointment of the conservator or receiver; or
>   (II) in the case of any contract or agreement referred to in paragraph (8), the date of the disaffirmance or repudiation of such contract or agreement.
>
> (B) No liability for other damages
>
> For purposes of subparagraph (A), the term "actual direct compensatory damages" does not include -
>
> (I) punitive or exemplary damages;
> (ii) damages for lost profits or opportunity; or
> (iii) damages for pain and suffering.

12 U.S.C. § 1821(e)(3)(A)

The FDIC-R states that a recoverable claim under FIRREA "must represent an amount due and owing at the time of the declaration of insolvency, although the specific

amount of the claim may be established later." Citibank N.A. v. FDIC, 827 F.Supp. 789, 791 (D.D.C. 1993), modified on other grounds, 857 F.Supp. 976 (D.D.C. 1994). In F.D.I.C. v. Parkway Executive Office Center, Nos. CIV A 96-121, 96-122, 1998 WL 18204, *2 (E.D.Pa. Jan. 9, 1998), the Court stated that compensable damages under the statute are those damages which are "fixed, certain and vested" as of the date of appointment. In order to determine if a right has vested on the date a bank is taken over, courts look to whether the "insolvent bank's promise was 'binding and enforceable under contract law' at that time." Nashville Lodging Co. v. RTC, 59 F.3d 236, 244 (D.D.C. 1995)(quoting Office and Professional Employees Int'l Union, Local 2 v. FDIC, 27 F.3d 598, 602 (D.C.Cir.1994)). FDIC-R argues that plaintiff's claim fails because Premier Bank had already disbursed all of the funds available under the loans by the time it was declared insolvent and thus it had fulfilled its obligations.

     Plaintiff argues in opposition, that the Court previously rejected this argument, when it denied the Motion to Dismiss and found that plaintiff had stated a claim for relief. However, simply because the Court found that GMB may have initially stated a claim for relief, does not mean that it will automatically prevail on its claim. Plaintiff must offer evidence which supports each and every element of its claim and "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. 242, 248 (1986). When considering a Motion to Dismiss, the Court is required to accept the plaintiff's factual allegations as true and grant all reasonable inferences in plaintiff's favor." Phipps v. FDIC, 417 F.3d 1006, 1010 (8th Cir.2005). In response to the Motion to Dismiss, GMB had asserted that funds had been drawn on both of the notes, and that these draws took place prior to the FDIC-R's appointment. Plaintiff also asserted that

6

the loans were part of a single integrated transaction with the Letters of Credit, and thus the bank had outstanding obligations to provide funding under the Letters of Credit at the time of the receivership. However, the discovery which has taken place in the case, since the Motion to Dismiss was ruled, has shown that the bank in fact did not have outstanding obligations to GMB and had disbursed all of its funds under the loans. Thus, the Court is required to review this additional information in assessing the Motions for Summary Judgment.

GMB argues that the letters of credit and the loans were inextricably linked as part of a single integrated transaction and without assurances from the Bank that the letters of credit would be in place and would be honored, there would have been no point for GMB to have incurred debt under Loan 3498 and 6544. Plaintiff states that because the loans and letters of credit were part of a single integrated transaction and because the letters of credit had not been funded, the bank still had funding obligations to GMB. Plaintiff also argues that it was at the very least a third party beneficiary under the letters of credit.

FDIC argues that GMB does not dispute that the Bank's obligations under the Letters of Credit ran to the City and fails to identify any obligation running to GMB. FDIC also argues that even assuming that GMB was a third party beneficiary of the letters of credit, the intent of the letters of credit is irrelevant to the FIRREA claim. The FDIC also argues that GMB's claim that the letters of credit were part of a single integrated transaction with the loans fail because GMB did not have a contractual right to funding under either Loan 3498 or the Letters of Credit. Thus, neither the repudiation of Loan 3498 or the letters of credit entitles GMB to recovery under FIRREA.

7

Additionally, FDIC argues the loan and the letters of credit are separate transactions, the Loan was entered into four years before the Letters of Credit, the documents do not reference each other and the obligations are not dependent upon nor related to each other. GMB is not a party to the Letters of Credit and the City is not a party to Loan 3498.

FDIC-R also argues that GMB had no right to funding under the Letters of Credit prior to its appointment because that right ran to the City of Wildwood, not to GMB. The letters of credit secured GMB's obligations under the two deposit agreements that it had entered with the City of Wildwood. In the Letters of Credit, the bank promised to honor the City's sight drafts subject to certain conditions. Thus, the Letters of Credit were a "binding and enforceable" promise on the part of the Bank to pay *the City*, not to pay GMB. Thus, because no amount was due and owing under the Letters of Credit at the time of the FDIC's appointment, GMB has no claim to damages as a result of the repudiation.

The Court agrees and finds that GMB does not have a recoverable claim under the statute. As noted above, a recoverable claim under FIRREA "must represent an amount due and owing at the time of the declaration of insolvency" Citibank, N.A., 827 F.Supp. at 791. At the time that the Court ruled on the Motions to Dismiss, the Court understood that there may still have been funds available to disburse under these loans. However, through discovery it was revealed that all of the funds under both loans had been disbursed, and the bank had no remaining obligations to GMB. GMB's President, Daniel Barnard testified:

Q. Is it fair to say that all funds drawn on this loan would have been drawn by June 7th

of 2009 or, I'm sorry, June 7th of 2010?
A. Yes.

(Barnard Depo. p. 44).

Q. I'm going to hand you what's been marked as Exhibit 6 and I'll represent to you that I believe this is the original note on loan number 26544 as well as the renewals on that note. You can take a look and see if you agree with that statement?
A. Okay. I've read through this or looked at these dates anyway.
Q. Does that appear to be correct?
A. This appears to be the first note that was executed to build homes.
. . .
Q. And so like with loan 23948 GMB's ability to draw on this note was basically extinguished, is that correct?
A. That's correct.
Q. So the note amount was cut off at the funded portion as of June 7th, 2010?
A. Yes.
Q. Any you explained this loan was the construction portion of the loan, is that correct?
A. For the two display homes.

(Barnard Depo, pp. 55-57).

GMB also attempts to argue that it had a right to funding under the Letters of Credit. However, the letters of credit were not issued to GMB, but rather were issued to the City. The Court had initially understood that the Letters of Credit and the loans were part of a single integrated transaction. But, further discovery has revealed that the Letters of Credit and the Loans were actually separate financial transactions with different parties. The loans were initially taken out in 2005 and 2008 and were between GMB and the Bank. The letters of credit were issued by the bank to the City in 2009 and evidenced the Bank's promise to honor the City's sight drafts subject to certain terms and conditions. Thus, the Bank's obligation under the Letters of Credit ran to the City, not to GMB. Even though GMB may have been a third party beneficiary under the Letters of Credit, this did not impose any obligation on the part of the Bank to provide

9

funds to GMB under the letters of credit. Therefore, because there was no money "due and owing" to GMB from the bank on the date that the FDIC was appointed receiver, GMB has no recoverable claim for damages. Accordingly, the Court hereby **GRANTS** FDIC-R's Motion for Summary Judgment on Count I.

### 2. Count II- (Setoff)

The FDIC-R argues it is entitled to summary judgment on plaintiff's set-off and declaratory judgment claims because the FDIC no longer holds the loans. Plaintiff failed to respond to this argument. The Court notes that the right of setoff allows parties that owe each other money to apply their mutual debts against each other. Citizens Bank of Maryland v. Strumpf, 516 U.S.16,18, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995). The FDIC-R argues that courts have rejected setoff claims where the FDIC-R has sold the loans at issue. Nashville Lodging Co., 59 F.3d at 246; FDIC v. Kooyomjian, 220 F.3d 10, 14 (1st Cir. 2000). FDIC-R states that it transferred its rights, title and interest in Loans 3498 and 6544 to CADC and thus has no claims against GMB arising out of the loans. Thus, because there are no mutual debts between GMB and FDIC-R, the setoff claim fails as a matter of law. Accordingly, the Court hereby **GRANTS** FDIC-R's Motion for Summary Judgment on Count II.

### 3. Count III - (Declaratory Judgment)

FDIC-R states that in Count III, GMB seeks a declaratory judgment that its repudiation of Loan 3498 released and relieved GMB from any and all obligations under Loan 3498 and 6544. However, FDIC-R states that because it no longer owns the loans, it is not the appropriate subject of the declaratory relief that plaintiff seeks. FDIC-

10

R states that the court cannot declare that GMB is relieved from obligations to the FDIC-R that no longer exist. The Court agrees and therefore **GRANTS** FDIC-R's Motion for Summary Judgment on Count III.

### B. CADC's Motion for Summary Judgment

In the Amended Complaint, plaintiff alleged in Count II that it was entitled to a setoff of the alleged damages caused by the FDIC's repudiation of the letters of credit against amounts owed by plaintiff to CADC for the two notes. In Count III plaintiff sought a declaratory judgment that it was not in default under the two loans and that plaintiff is relieved from performance of its obligations. CADC moves for summary judgment on Counts II and III of plaintiff's Complaint, as well as moving for summary judgment on its counterclaim against GMB for default and its Third-Party Complaint against the guarantors.

### 1. CADC's Motion for Summary Judgment as to Plaintiff's Complaint

#### a. Count II - Setoff

CADC argues that it is entitled to summary judgment on Count II because plaintiff's damages were not caused by the repudiation. CADC argues that the repudiation did not cause plaintiff to default on the loans and plaintiff instead made a business decision to default on the loans. Because plaintiff is not entitled to damages, its claim for setoff and declaratory judgment also fails, because there is no mutual indebtedness. Also, CADC argues that because it did not expressly assume FDIC's liability for repudiating the letters of credit, it cannot be liable for any damages resulting from the repudiation.

11

Plaintiff argues in response that it incurred out of pocket expenses related to the acquisition and development of the property, prior to the FDIC's appointment as Receiver. Plaintiff states that this acquisition and development was undertaken in reliance on the Bank's promises and obligations to provide funding for the project via the loans and the Letters of Credit. Plaintiff states that until the loans and the letters of credit were repudiated by the FDIC, plaintiff had the lawful right and ability to build and sell homes in Grover Crossing, but this ceased when the FDIC repudiated the loans and the letters of credit. Plaintiff also states that CADC cannot be a holder in due course because it purchased the loans after their maturity dates, when they were no longer negotiable. Thus, plaintiff argues that the CADC stands in the shoes of the FDIC subject to plaintiff's claims and defenses.

As discussed above, the Court has determined that the FDIC-R is not liable to GMB for any damages due to the repudiation of either the loans or the letters of credit. Accordingly, as plaintiff has no damages, there is no mutual indebtedness between plaintiff and CADC and plaintiff is not entitled to a setoff against the amount it owes to CADC. Accordingly, the Court hereby **GRANTS** CADC's Motion for Summary Judgment on Count II.

### b. Count III - Declaratory Judgment

Plaintiff in Count III seeks a declaration that the FDIC breached Loans 3498 and 6544 and that its breach of these loans released GMB and relieved it from performance of any and all obligations under the loans to the CADC. However, the Court has already determined that the FDIC-R did not breach its obligations to GMB under either the

12

Loans or the Letters of Credit. Because of this determination, plaintiff is not relieved of its obligations under the loans. Accordingly, the Court hereby **GRANTS** CADC'S motion for summary judgment on Count III of plaintiff's Amended Complaint.

**2. CADC's Motion for Summary Judgment on its Counterclaim**

CADC also argues that it is entitled to summary judgment on its counterclaim against GMB because it is undisputed that GMB defaulted under the loans. CADC states that GMB agreed to be liable for the sums due on the notes when they became due and payable. The Bank and CADC performed all of their obligations under the loans and all available funds were forwarded to Plaintiff. However, after receiving demand for payment by CADC, plaintiff failed to pay the amounts due and owing under the terms of the loans. CADC argues that the failure to pay the outstanding amounts of the loans is an event of default.

Plaintiff argues that it *is* disputed whether it defaulted under the loans. Plaintiff states that once a contract is repudiated, it is treated as a breach of contract. The FDIC's repudiation constituted a breach of those contracts and hindered plaintiff's performance. Plaintiff also argues that the FDIC anticipatorily breached the loans and the letters of credit in November 2010, when a member of Price Waterhouse Coopers meet with them and informed them that the loans/letters of credit were going to be repudiated.

As discussed earlier, the Court has determined that the FDIC-R is not liable to plaintiff for any damages arising out of the repudiation of the letters of credit. The loans matured in December 2010, but the letters of credit were not repudiated until January

13

10, 2011 and Loan 3498 was not repudiated until February 2011. The FDIC did not take any action from October 2010 (when the FDIC was appointed receiver) until December 2010 (when the loans matured) which hindered or prevented GMB's ability to repay the loans. As GMB's President, Daniel Barnard testified, GMB was anticipating that the bank would renew the loan again, as it had done several times before. Mr. Barnard testified that GMB could not make the payments, not because the bank failed to extend the maturity date, but "[b]ecause of market conditions and other alternative sources of financing we weren't able to get the loan paid off." (Barnard Depo., p. 53-54). Mr. Barnard stated that GMB had funds in December 2010, but "we have to do cash flow planning like any other business organization and we had a number of other projects similar to Grover Crossing like many other builders did. And if we had drained our bank account to simply pay off the loan for one lender we wouldn't have had the funds to do it for the other lenders which undoubtedly would have piled on and taken the same approach." He testified that GMB had to make an internal choice as to where to allocate its available funds. (Barnard Depo. p. 54).

GMB also argues that the FDIC committed anticipatory breach of the Letters of Credit and the loans at a meeting held at the bank in November 2010. However, Mr. Barnard testified he does not remember the name of the person who met with him. He only recalls that the person worked for the accounting firm of Price Waterhouse Coopers and said that generally old loans were not renewed when a bank was taken over and that the FDIC would be repudiating the letters of credit. (Barnard Depo. p. 47). CADC argues that there is no indication that this individual had any authority to make representations on behalf of the FDIC. Additionally, CADC argues that whatever this

14

individual may have said would be hearsay and thus cannot be relied upon. The Court agrees and finds that there is no reliable evidence that the bank anticipatorily breached either the loans or the letters of credit in November 2010.

The Court finds that it is undisputed that GMB defaulted on Loan 23498 and 26544. GMB agreed to be liable for the sums due on the notes when they became due and payable. The Bank performed all of its obligations under the loans and all available funds were forwarded to GMB during the terms of the loans. However, despite being obligated and despite demand being made by CADC, GMB failed to pay the amounts due and owing under the loans. Plaintiff's refusal to pay the outstanding amounts due under the loans is a default under the terms of the loan. Accordingly, as there no disputed issues of fact regarding the default, the Court hereby **GRANTS** CADC's Motion for Summary Judgment on Counts I and II of its Counterclaim.

### 3. CADC's Motion for Summary Judgment on its Third-Party Complaint

CADC also argues that it is undisputed that Greater Midwest Builders, Inc., Paul Campbell and Sarajane Campbell all signed guaranty agreements and because they have breached their guaranty agreements, they are liable to CADC for the deficiency balance. "To recover on a contract for a guaranty, the creditor must show (1) that the defendant executed the guaranty,(2) that the defendant unconditionally delivered the guaranty to the creditor, (3) that the creditor, in reliance on the guaranty, thereafter extended credit to the debtor, and (4) that there is currently due and owing some sum of money from the debtor to the creditor that the guaranty purports to cover." ITT Commercial Fin. Corp. v.. Mid-Am. Marine Supply Corp., 854 S.W.2d 371, 382

15

(Mo.1993)(en banc). CADC argues that with regard to the first element, the guarantors admit to having executed the Guaranty Agreements. As to the second element, the Guaranty Agreements state that the guarantors "absolutely and unconditionally" guaranteed payment of Loan 23498 and 26544 when the amounts became due and payable. With regard to the third element, CADC notes that the guaranties were given at the same time that the loans were made and/or restated. Thus, the guaranty agreements were supported by consideration. As to the last element, CADC argues that GMB has defaulted on the loans, thus entitling CADC to proceed against the guarantors.

The guarantors argue that genuine issues of fact remain as to their liability, because it is contingent upon plaintiff's liability and it is not clear or undisputed that plaintiff defaulted under the loans. However, as the Court has found above, plaintiff did default on the loans. Therefore, because the plaintiff's liability has now been determined, the Court hereby **GRANTS** CADC's Motion for Summary Judgment on Count III of its Third-Party Complaint against the guarantors.

### C. Remaining Motions

In light of the Court's rulings on the summary judgment motions, the Court hereby **DENIES AS MOOT** FDIC's Motion to Strike Exhibit H of Plaintiff's Response in Opposition to FDIC-R's Motion for Summary Judgment (Doc. # 83), **DENIES AS MOOT** CADC's Motion in Limine to Exclude Plaintiff From Offering Hearsay Testimony (Doc. # 91), **DENIES AS MOOT** FDIC-R's Motion in Limine to Exclude Hearsay Testimony (Doc. # 93) and **DENIES AS MOOT** FDIC-R's Motion in Limine to Exclude Documents Not Produced by Plaintiff (Doc. # 95).

## IV. CONCLUSION

Accordingly, for the reasons stated above, the Court hereby **GRANTS** defendant FDIC-R's Motion for Summary Judgment (Doc. # 56), **GRANTS** defendant CADC/RADC Venture 2011-1, L.L.C.'s Motion for Summary Judgment (Doc. # 58) and **DENIES AS MOOT** FDIC's Motion to Strike Exhibit H of Plaintiff's Response in Opposition to FDIC-R's Motion for Summary Judgment (Doc. # 83), **DENIES AS MOOT** CADC's Motion in Limine to Exclude Plaintiff From Offering Hearsay Testimony (Doc. # 91), **DENIES AS MOOT** FDIC-R's Motion in Limine to Exclude Hearsay Testimony (Doc. # 93) and **DENIES AS MOOT** FDIC-R's Motion in Limine to Exclude Documents Not Produced by Plaintiff (Doc. # 95).

Date: December 11, 2012　　　　　　　　　　**S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri　　　　　　　　　　　Fernando J. Gaitan, Jr.
　　　　　　　　　　　　　　　　　　　　Chief United States District Judge