# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| GREATER MIDWEST BUILDERS, LTD., | ) |
| Plaintiff, | ) |
| vs. | ) NO. 2:11-CV-4225-FJG |
| FEDERAL DEPOSIT INSURANCE CORP., ET AL., | ) |
| Defendants. | ) |

## ORDER

Currently pending before the Court is CADC/RADC Venture 2011-1's Motion to Alter or Amend Judgment to Include Damage Amount (Doc. # 106) and Third-Party Defendant Sarajane Campbell's Motion for Reconsideration and Motion to Alter or Amend the Judgment (Doc. # 108).

## I. BACKGROUND

In 2005, Plaintiff, Greater Midwest Builders, Ltd. ("GMB") purchased land in Wildwood, Missouri for the purpose of developing, building and selling attached homes. In order to finance this project, GMB entered into various loan transactions with Premier Bank in order to facilitate the development of the Grover Crossing Subdivision in Wildwood, Missouri. On September 7, 2005 plaintiff entered into loan 23498 with Premier Bank, whereby the bank extended a commercial draw account to plaintiff in the amount of $2,677,000. This loan was renewed five times: (September '07, March '08, June '08, June '09 and June '10). During the process of renewal, the total amount

available to GMB was changed to $2,252,889.31. As of June 7, 2010, Premier Bank had loaned GMB the full amount of the commercial draw account under this loan and no further funds were available to plaintiff. Loan 23498 matured on December 7, 2010.

On July 28, 2008, GMB entered into Loan 26544 with Premier Bank whereby Premier extended a commercial draw account to Plaintiff in the amount of $1,126,950. This loan was renewed on two occasions (June '09 and June '10). During the process of renewing, the loan amount was changed to $764,131.84. As of June 7, 2010, Premier Bank had loaned plaintiff the full amount of the commercial draw account and no further funds were available to plaintiff. Loan 26544 also matured on December 7, 2010.

In 2009, Greater Midwest Builders built two display homes in Grover Crossing, but had no financing available to begin building inventory homes for sale. On November 9, 2009, Premier Bank established three irrevocable standby letters of credit in favor of the City of Wildwood and for the account of GMB. In reliance upon Premier Bank's issuance of these Standby Letters of Credit, GMB entered into Letter of Credit Deposit Agreements with the City of Wildwood. The Standby Letters of Credit served as various required deposits.

On October 15, 2010, Premier Bank was placed in receivership and the FDIC-R was appointed receiver. FDIC-R published notice of Premier Bank's receivership as well as notice to creditors on October 21, 2010. In the notice, FDIC-R instructed GMB that all payments under Loan 3498 should be made payable to FDIC-R and advised GMB to immediately seek an alternative funding source. Pursuant to the terms of the renewal note dated June 7, 2010, Loan 3498 matured on December 7, 2010 and all

principal and interest became due and owing. GMB failed to make payment in full on Loan 3498 when it became due and owing on December 7, 2010.

On January 10, 2011 the FDIC-R, sent GMB notice of its repudiation of the three letters of credit. It also notified GMB that its failure to pay Loan 3498 in full on its maturity date constituted a default under Loan 3498. On January 26, 2011, the FDIC-R sent a demand letter to GMB requesting immediate payment of Loan 3498 in full. On February 17, 2011, the FDIC-R notified GMB that it was exercising its right of repudiation of Loan 3498. On May 16, 2011, in accordance with 12 U.S.C. § 1821, plaintiff filed a Proof of Claim with the FDIC alleging actual damages and setoff. On June 27, 2011, the FDIC mailed it Notice of Disallowance to Plaintiff. On August 24, 2011, the FDIC sold and/or assigned its interest in the loans and/or security instruments to CADC/RADC Venture 2011-1, L.L.C.

Plaintiff asserted three causes of action: Count I - Actual Damages Resulting from Repudiation Under 12 U.S.C. § 1821(e)(3) against the FDIC; Count II - Setoff against all defendants and Count III - Declaratory Judgment against all defendants. The FDIC-R sought summary judgment on all of GMB's claims. CADC also sought summary judgment on GMB's claims against it as well as summary judgment on its counterclaim against GMB and its third-party complaint against the guarantors, Greater Midwest Builders, Inc, Paul Campbell and Sarajane Campbell. On December 11, 2012, this Court granted the FDIC's motion for summary judgment on all three counts of the Complaint and also granted CADC's motion for summary judgment on Counts II and III. The Order also granted CADC's motion for summary judgment on its Counterclaim, finding that plaintiff's refusal to pay the outstanding amounts due under the loans was a

default under the terms of the loan. The Court did not make a monetary award of damages, because CADC did not request in the Motion for Summary Judgment, that an award of damages be entered.

## II. STANDARD

Fed.R.Civ.P. 59(e) provides, " [a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." In <u>B.M. ex rel. Miller v. South Callaway R-II School Dist.</u>, No. 11-4029-NKL, 2012 WL 5818001, (Nov. 15, 2012), the Court stated:

> A district court has broad discretion in determining whether to grant a motion to alter or amend judgment. . . .Rule 59(e) motions serve the limited function of correcting manifest errors of law or fact or to present newly discovered evidence. . . .The purpose of the Rule is to allow the district court the power to rectify its own mistakes in the period immediately following the entry of judgment. . . .A rule 59(e) motion to alter or amend must show: 1) an intervening change in controlling law; 2) the availability of new evidence not available previously; or 3) the need to correct a clear error of law or prevent manifest injustice.

<u>Id</u>. at *1 (internal citations and quotations omitted).

## III. DISCUSSION

**A. CADC's Motion to Alter or Amend Judgment to Include Award of Damages**

CADC states that the Order and Judgment should be amended to include a dollar judgment against the counterclaim defendants. CADC states that the amounts at issue are uncontroverted and are a straightforward calculation. Thus, CADC argues that as of the date of the Court's Order, and taking into account proportionate credits for the foreclosure sale, counterclaim defendants owe $1,817,972.46 on Loan 23498 and $626,097.87 on Loan 26544. CADC also states that the counterclaim defendants are

4

liable for breach of the notes and guarantees in the amount of $2,444,070.33.

In opposition, the Plaintiff/Counterclaim defendant and Third-Party Defendants argue that the motion should be denied because CADC in its summary judgment motion did not request that damages in be awarded in any amount.  Additionally, they argue that CADC did not include any statement of uncontroverted material facts or evidence in connection with the motion.  Plaintiff/Counterclaim defendant and Third-Party defendants also argue that there are questions of fact surrounding the issue of damages, such as whether the sale was conducted in a commercially reasonable manner.  Plaintiff/Counterclaim and Third-Party defendants also argue that CADC's alleged damage calculations are inaccurate and are disputed.

In reply, CADC argues that there are no disputed issues of fact regarding their damages.  In support of this assertion, they cite to various portions of their previously filed motion for summary judgment and supporting exhibits.  However, in their Motion for Summary Judgment, CADC discussed only *plaintiff's* damages and did not discuss, mention or even request that damages be awarded in their favor. The Court believes that in order to give Plaintiff/Counterclaim defendant and Third-Party defendants an opportunity to appropriately challenge any damage calculation or raise any other arguments they might have relative to CADC's damages, that there should be separate briefing regarding this issue.  Accordingly, CADC shall file a Motion for Summary Judgment on their request for the entry of damages on or before **May 22, 2013.** Plaintiff/Counterclaim defendant and Third-party Defendants shall file their responses on or before **May 31, 2013** and CADC shall file any reply suggestions on or before **June**

5

7, 2013.

## B. Sarajane Campbell's Motion to Alter or Amend Judgment or For Reconsideration

Third-party defendant Sarajane Campbell has also moved the Court to allow her to assert a defense under the Equal Credit Opportunity Act 15 U.S.C. § 1691 ("ECOA"). to Count III and to exclude her from the Judgment and Order and to allow the third-party claim against her to proceed to trial. Ms. Campbell states that pursuant to Fed.R.Civ.P. 59(e), courts are permitted to alter or amend the judgment when there has been a change in the law. Mrs. Campbell states that on September 25, 2012, the Missouri Court of Appeals decided <u>Frontenac Bank v. T.R. Hughes, Inc.</u>, No. ED 97499 2012 WL 4486312 (Mo.App. Sept. 25, 2012). She asserts that this case represents a significant change in Missouri law because it considered whether a spouse's personal guaranty fell within the exception in Section 202.7(d)(4) in light of state law and specifically Missouri's tenancy by the entireties law.

In opposition, CADC argues that the Court should deny the Motion because, 1) Ms. Campbell did not raise this affirmative defense in either her Answer or in the Summary Judgment pleadings; 2) the <u>Frontenac Bank</u> case does not represent a change in Missouri law and 3) the defense could have been asserted earlier. CADC notes that the ECOA defense which Ms. Campbell asserts was a defense provided by federal law and recognized by Missouri courts at least as early as 2001. Additionally, the <u>Frontenac</u> case was decided on September 25, 2012. This was thirteen days before the Campbells filed their Suggestions in Opposition to CADC's Motion for Summary Judgment. Additionally, the briefing on Summary Judgment motions was not

6

completed until October 29, 2012 and the Court did not issue its ruling on the summary judgment motions until December 11, 2012. Thus, there was ample time to move to supplement the briefing and raise this defense before the Court issued its decision. In Buzzanga v. Life Ins. Co. of North America, No. 4:09-CV-1353(CEJ), 2013 WL 781800 (E.D.Mo. Mar.1, 2013), the Court stated, "[Rule 59(e)] motions cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment." Id. at *1. In the instant case, Ms. Campbell is attempting to assert an argument which could and should have been offered prior to the entry of judgment.

Additionally, the Court finds that the Frontenac case did not represent a change in Missouri law. In Boone Nat. Savings & Loan Ass'n v. Crouch, 47 S.W.3d 371, 372 (Mo.banc 2001), the Missouri Supreme Court stated that "a purported violation of the Equal Credit Opportunity Act can be raised as an affirmative defense." The bank in Frontenac argued that the circuit court had erred in declaring the personal guarantees null and void under the ECOA, because several federal cases decided since Boone National Savings & Loan had rejected the extension of the ECOA to spousal guarantees. The Frontenac court stated:

> [w]ithout reason why this Court should abandon the doctrine of *stare decisis*, we follow the binding Missouri precedent in Boone National Savings & Loan Assoc. v. Crouch, 47 S.W.3d at 373. Accordingly, Carolyn is protected by the ECOA as a guarantor of the loans at issue in this case. We find the circuit court did not err in declaring Carolyn's personal guarantees null and void under the ECOA based on the Missouri Supreme Court's ruling in Boone National Savings & Loan Assoc..

Id. at *16. This language does not indicate that the Frontenac case represents a "significant change" in Missouri law. Rather, the Frontenac case was adhering to the

7

earlier decision of the Missouri Supreme Court in Boone. The Frontenac case may have clarified the application of an exception under the ECOA, but this case did not represent a "significant change" in Missouri law. This affirmative defense could and should have been raised earlier.  Accordingly, for these reasons, Sarajane Campbell's Motion for Reconsideration and Rule 59(e) Motion to Alter or Amend the Judgment is hereby **DENIED** (Doc. # 108).

## IV. CONCLUSION

For the reasons stated above, the Court hereby directs CADC to file a Motion for Summary Judgment on their request for the entry of damages on or before **May 22, 2013.**  Plaintiffs/Counterclaim defendants and Third-party Defendants shall file their responses on or before **May 31, 2013** and CADC shall file any reply suggestions on or before **June 7, 2013**.

Third-party defendant Sarajane Campbell's Motion for Reconsideration and Rule 59(e) Motion to Alter or Amend Judgment is hereby **DENIED** (Doc. # 108).


Date: May 13, 2013　　　　　　　　　　　**S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri　　　　　　　　　　Fernando J. Gaitan, Jr.
　　　　　　　　　　　　　　　　　　　　Chief United States District Judge